# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CRIM. NO. 2006-0030 |
| ZACHEAUS BLAKE, et al., | ) ) | |
| Defendants | ) ) | |

## MEMORANDUM OPINION

Finch, Senior Judge.

THIS MATTER comes before the Court on the Motion for New Trial Based on Newly Discovered Evidence filed by Defendant Kalif Berry, with which all Defendants have joined. A hearing was held on such motion on August 7, 2008. The parties filed supplemental briefs after reviewing the hearing transcript.

**I.     Facts**

In April 2007, a jury found the six remaining Defendants guilty on all counts.[1]  One of the jurors had served on a previous jury that found Defendant Kalif Berry guilty of assault in the third degree, reckless endangerment, and possession of a deadly weapon in 1999 after a three day trial.  Tr. 4:14-16.  Defendant Blaine Claxton had testified on Berry's behalf at the 1999 trial.

The juror did not indicate that she knew any of the Defendants at voir dire. Berry avers that when he saw the juror, she looked familiar to him. But it was not until after the trial that Berry considered that the familiarity could have resulted from the juror sitting on his 1999 case.

---

[1] One Defendant had been dismissed pursuant to Rule 29 of the Federal Rules of Criminal Procedure and another Defendant had entered a guilty plea.

Subsequent to trial, Berry obtained a list of the jury panel from the earlier case, which included a name similar to that of the juror who looked familiar to him.  After receiving the list, Berry filed the instant motion.

At the evidentiary hearing, the juror testified that she worked as a secretary for a government entity and that she had completed two years of college, studying business administration.  Tr. 50:3-7; 63:4-9.  Yet she did not know her own age or the ages of her four children.[2]  When pressed, she stated that she was born in September 1970 and that her youngest

---

[2]
    [MR. CAPDEVILLE:]   What is your birth date?
    [THE WITNESS]:    I can't help you with that.
    Q.    You don't know what day you were born?
    A.    No.
    Q.    Not the month?
    A.    No.
    . . . .
    Q.    [Y]ou testify today that you do not know what month or what day you were born?
    A.    That something I don't use every day, so I don't have it on my head.
    Q.    Do you have, do you celebrate a birthday at all?
    A.    Everyone does.
    Q.    Including you?
    A.    Yes, I do.
    Q.    So what day of the month, in which month do you celebrate your birthday?
    A.    Sometimes when it pass, sometimes when it pass, I remember that, oops, my birthday was so and so.
    Q.    What is so and so?
    A.    A few months back.
    Q.    February?
    A.    Maybe.
    Q.    January.
    (Pause)
    Q.    You've got to tell me.
    A.    Excuse me.
    THE WITNESS:    You Honor, is this relevant?
    MR. CAPDEVILLE:    You have to answer the question unless there's an objection and then the Judge rules.
    THE WITNESS:    Unless there's an objection.  I was born in September.

child was two years old. But she insisted that she did not recall what day in September she was born or the ages of her other three children. The juror first testified that her memory was sound, but then explained that she had suffered from a memory loss for several months between the

---

        MR. CAPDEVILLE. Thank you.
BY MR. CAPDEVILLE:
        Q.      Now, do you have children?
             . . . .
        [A]:   Yes, I do.
        Q.      What are their ages?
             . . . .
        [A]:   I don't recall their ages.
        Q.      How many children to you have?
        A.      I have four.
        Q.      And you don't recall any of their ages?
        A.      Not offhand.
        Q.      If I were to ask, how old is the youngest, could you tell me?
        A.      Maybe.
        Q.      What would you say is the age of the youngest child?
        A.      The youngest would be two.
        Q.      And how old is the oldest?
        A.      I don't know offhand.
        Q.      You don't know how old your oldest child is?
        A.      Not offhand, no.
        Q.      Okay.
             You say "not offhand." Is there something that would help you remember?
        A.      I would have to do the calculation.
        Q.      Similar to the calculation that you did for your birthday?
        A.      Something like that. But it's multiple, so I don't recall the years.
        Q.      Okay. And you don't recall how old your children – your oldest child is?
        A.      No.
        Q.      Do you recall the age of your next-oldest child?
        A.      No.
        Q.      Do you recall the age of your third-youngest child?
        A.      No.

Tr. 49:19-25; 51:14-54:13.

conclusion of the trial and the evidentiary hearing which affected her memory of the Defendants.[3] The juror claimed to not recognize Berry or Claxton from the 1999 trial.

On cross-examination, the juror's demeanor changed dramatically. She was fully responsive to the questions of Government's counsel. When Government counsel inquired about voir dire, she remembered the Court's question, the responses of other jurors, and her own reaction to the Court's question. Tr. 72:14-73:3. Her memory of the voir dire was not hampered by the intervening ailment that she claimed caused her memory loss.

## II.     Discussion

The defendant has a heavy burden to meet to obtain a new trial. United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008). Rule 33 of the Federal Rules of Criminal Procedure provides for a new trial "if the interest of justice so requires." Fed. R. Crim P. 33(a). However, the interest of justice is only met when the defendant can demonstrate that the evidence has been discovered since trial; the defendant has been diligent in discovering such evidence; and the

---

[3]   [MR. CAPDEVILLE:]    Do you have a memory problem . . . .?
    [THE WITNESS:]    No.
    . . . .
    BY MR. OTTO:
Q.    Is it easier for you to not remember the defendant?
A.    I had an ailment for six months, from February to July. I got relief. I had migraine headaches. My brain was hurting me. I had memory loss. I couldn't remember where I put a document in three days time.
And for the examination, when I went to find out what it was, the exam that I got, I felt it throughout my whole body. Okay? So whatever it is, was there, I don't remember much.
Q.    Okay.
When was this exam taken?
A.    Probably May or June this year.

Tr. 63:3-4; 75:12-24.

evidence is material and prejudicial, rather than merely cumulative or impeaching.  See Kelly, 539 F.3d at 181-82.  The evidence must also be of such a nature that it would probably produce an acquittal, id., or "bear[] instead upon the integrity of the jury's verdict in the completed trial," Holmes v. United States, 284 F.2d 716, 720 (4th Cir. 1960).  "If just one of the requirements is not satisfied, a defendant's Rule 33 motion must fail."  Kelly, 539 F.3d at 182.

    A.    Newly Discovered

The juror did not reveal at voir dire that she had served on the jury that found Berry guilty in 1999.  It was not until Berry obtained the list of the jury panel that Berry could verify that he recognized the juror from the 1999 trial.   Thus, the evidence is newly discovered.

    B.    Defendants' Diligence

The Government faults Berry for not being diligent in ascertaining that the juror in question had sat on the earlier panel.   According to the Government, once Berry thought that the juror looked familiar, he should have seized on the explanation that she had served at his 1999 trial, rather than that he had seen her in the community.

Although Berry told his counsel that the juror looked familiar to him, according to Berry, his counsel was dissuaded from further investigation because the juror did not acknowledge any connection with Berry during voir dire.  It was not until after trial, that Berry's family suggested to him that he determine whether the juror had served at the 1999 trial.  Berry's newly assigned counsel promptly obtained the names of the 1999 jury panel and, without undue delay, sought a new trial.

If Berry had believed that the juror had served at his 1999 trial and not voiced his

5

concern, the Court would deny his motion for a new trial for lack of diligence (although not necessarily his Co-defendants' motions). Yet, it would have been against Berry's interest to be tried before a juror that previously had found him guilty of crimes for which he received an eight-year sentence. If Berry had remembered that she had served on the 1999 jury, Berry would have been so concerned that she would prejudge his guilt based on his prior conduct, that he certainly would have sought her removal from the jury before she was even sworn. That Berry would forego the chance of being found not guilty by an impartial jury, calculating that this juror's bias would give him grounds for being tried anew, is farfetched. The Government's theory that Berry believed that the juror may have served at his 1999 trial, but remained silent while she deliberated on the present charges against him, is not persuasive.

Moreover, there is no evidence of any other Defendants' lack of diligence. Although Claxton was called to the stand at the evidentiary hearing, he was not asked whether he recollected the juror from Berry's 1999 trial, in which he had given testimony. None of the other Defendants would have reason to know that the juror had served at Berry's 1999 trial. Therefore, Berry's Co-defendants have not waived their right to a new trial by not exercising diligence.

    C.    Material and Prejudicial

The newly discovered evidence is material because it raises the question of whether Defendants' trial was fair. "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). An impartial jury is one "capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). The jury must only consider evidence properly

admitted in court. Government of Virgin Islands v. Dowling, 814 F.2d 134, 138 (3d Cir. 1987). "[A] juror who has formed an opinion cannot be impartial." Irvin, 366 U.S. at 722 (quotation omitted).

If the juror had remembered Berry from his prior trial as she deliberated in this case, then she would have been considering evidence inadmissible pursuant to Rule 404(b) of the Federal Rules of Evidence. "[E]vidence of involvement in other crimes [is] intrinsically inadmissible as highly prejudicial information about a collateral matter not connected with the offense charged." United States v. Jacangelo, 281 F.2d 574, 576-77 (3d Cir. 1960).

A juror's exposure to prior crimes evidence is so improper and prejudicial as to warrant a mistrial, if it occurs during the course of trial Id.  When a juror is known to be exposed to extrinsic evidence of a defendant's guilty verdict on a similar charge, the juror generally must be disqualified during jury selection. See Leonard v. United States, 378 U.S. 544, 544-545 (1964); United States v. Carranza, 583 F.2d 25, 27 (1st Cir. 1978) ("[A] defendant has a constitutional right not to be tried by any jurors who had participated in his conviction in a prior case"). Similarly, when a juror's knowledge of a defendant's prior conviction is only discovered post-trial, the evidence is newly discovered, material and prejudicial, and the only remedy is a new trial. See Holmes, 284 F.2d at 720.

### D. The Integrity of the Jury's Verdict

Unless the Court can find that it is highly probable that the evidence of the prior conviction did not contribute to the jury's verdict, the Court must order a new trial. See Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976). Because evidence of a

7

prior conviction is highly prejudicial, the Court must either have a "sure conviction" that such evidence was not before the jury or grant a new trial.  See United States v. Mastrangelo, 172 F.3d 288, 297 (3d Cir. 1999) (stating that "high probability standard is met when the court possesses a 'sure conviction' that the error did not prejudice a defendant").

If the juror did not remember Berry after the passage of eight years, then Berry and his Co-Defendants would not have suffered any prejudice.  The Court had an opportunity to observe the juror at the evidentiary hearing held to determine whether the juror remembered Berry.  The juror was extremely reticent to answer Defendants' questions.  She claimed not to recall her own age, her birth month, or the ages of her children.  Only with persistence, did she reveal any of this information.  On the other hand, when Government counsel questioned her, she was fully responsive.

The juror was clearly biased in favor of the Government and against the Defendants. Thus, the Court does not credit her statement that she did not recollect Berry's 1999 trial.  From the juror's demeanor, tone of voice, and responses, the Court finds that the juror was not truthful when she stated that she did not recognize Berry from his 1999 trial.

Even if the Court's assessment is wrong, and the juror was truthful concerning her inability to remember her age and the ages of three of her children, the Court cannot be sure that her memory was so fractional at the time of the 2007 trial.  According to the juror, she suffered an ailment that caused her a memory loss after the 2007 trial.  The Court has no basis for determining whether or not the juror's retention at the time of the 2007 trial was such that she recognized Berry and Claxton from the 1999 trial.

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of

this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." Irvin, 366 U.S. at 724-25 (1961). From the juror's testimony, the Court does not find it highly probable that the juror was impartial. There is a likelihood that she was predisposed to find Berry guilty of the present charges based on his prior conviction, rather than solely based on the evidence properly before the jury.

Justice requires a new trial for the other Defendants as well as Berry. See Holmes, 284 F.2d at 719. "A finding of guilt was so dependent upon the connection [among the Defendants], that collateral information clearly prejudicial to [Berry] could hardly have been harmless to [his Co-Defendants]." Id.

### III.  Conclusion

The Court finds that Defendants have met their burden of demonstrating that a new trial is warranted. The evidence that the same juror served at Berry's 1999 and 2007 trials is newly-discovered. Berry was diligent in discovering this information. The evidence is material and highly prejudicial. The Court cannot conclude that it is highly probable that the evidence of the prior conviction did not contribute to the jury's verdict as to Berry. Because the charges against Berry are interrelated with those against his Co-Defendants, the Court orders a new trial as to all Defendants.

ENTER:

DATE:   December 15, 2008                  _____/s/_____
                                            RAYMOND L. FINCH
                                            SENIOR DISTRICT JUDGE