## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | CRIM. NO. 2006-0030 |
| v. | ) ) | |
| KHALIF BERRY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Finch, Senior Judge.

THIS MATTER comes before the Court on the Motion for Judgment of Acquittal filed by

Defendant Khalif Berry.  A jury found Berry guilty of the conduct charged in Counts 1, 4-8, 10,

27, 28, 33, and 34.  The Government contends that the evidence is sufficient to support the jury's

verdict on these charges.

### I.      Standard of Review

Review of the sufficiency of evidence supporting a conviction is "highly deferential."

United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001) (citation omitted).  The Court "must

determine whether the evidence submitted at trial, when viewed in the light most favorable to the

government, would allow a rational trier of fact to convict."  Hart, 273 F.3d at 371 (quotation

omitted).  "The verdict of a jury must be sustained if there is substantial evidence, taking the

view most favorable to the Government, to support it."  United States v. Iafelice, 978 F.2d 92, 94

(3d Cir. 1992) (quotation omitted).  "Only when the record contains no evidence, regardless of

how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict.  United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) (quotation omitted).

"To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty."  United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990) (quotation omitted).  "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation."  Iafelice, 978 F.2d at 97.  All issues of credibility are within the province of the jury.  Gonzalez, 918 F.2d at 1132.

The Court views the totality of the circumstances when examining the sufficiency of the evidence.  United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984).  "The prosecution may fulfill its burden of proving the elements of a crime through circumstantial evidence."  Paez v. O'Lone 772 F.2d 1158, 1160 (3d Cir. 1985);  see Jackson v. Virginia, 443 U.S. 307, 324-25 (1979) (finding that necessary intent was proven beyond a reasonable doubt through circumstantial evidence);  see also Leon, 739 F.2d at 891 (finding that record had sufficient circumstantial evidence for jury to find defendant guilty of aiding and abetting substantive crimes charged).  "It is not unusual that the government will not have direct evidence.  Knowledge is often proven by circumstances.  A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged."  Iafelice, 978 F.2d at 98.  "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing

connection between the facts established and the conclusion inferred.  The fact that evidence is circumstantial does not make it less probative than direct evidence."  McNeill, 887 F.2d at 450 (citation omitted).

"The prosecution must prove every element of a crime charged beyond a reasonable doubt. . . ."  Government of the Virgin Islands v. Smith, 949 F.2d 677, 682 (3d Cir. 1991).  "[D]iminishing this burden violates a defendant's right to due process."  Id.  On a post-trial motion for acquittal based on the insufficiency of the evidence, the Court must determine whether there is substantial evidence, direct or circumstantial, with logical inferences drawn in the light most favorable to the government, from which a reasonably jury could have found beyond a reasonable doubt that the government proved all the elements of the offense.  See United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991).

**II.     Analysis**

> A.      Counts 6 and 7 – Possession of Crack and Cocaine Powder with Intent to
>          Distribute by the Bridge Walkway at Club St. Croix

The jury found Berry guilty of possessing with intent to distribute 50 grams or more of crack and a detectable amount of cocaine powder by the bridge walkway at Club St. Croix, as charged in Counts 6 and 7, respectively, in violation of 21 U.S.C. § 841(a)(1).  "[T]he elements of the[se] offense[s] are (1) knowing or intentional (2) possession (3) with intent to distribute of (4) a controlled substance."  United States v. Goldberg, 538 F.3d 280, 287 (3d Cir. 2008) (quotation omitted).

A law enforcement officer saw Berry discard something on the bridge walkway at Club St. Croix as he ran from the area.  When they searched the area, law enforcement officers found

Berry' s cellular phone along with 75 grams of crack and 19 grams of cocaine powder.  From

Berry's conversations the jury could reasonable infer that Berry was involved in selling drugs.

Thus, substantial evidence supports the jury's verdict on Counts 6 and 7.

B.      Counts 4 and 5 – Possession of Crack Cocaine and Cocaine Powder in the Mirage
        at Club St. Croix.

Berry was found guilty of aiding and abetting Defendant St. Clair Liburd in possession of

50 grams or more of crack cocaine and a detectable amount of cocaine powder that was found in

a Mitsubishi Mirage at Club St. Croix, as charged in Counts 4 and 5, respectively.  Berry

contends that there is no evidence connecting him with the crack and cocaine powder seized from

the Mirage.

The jury heard telephone calls in which Berry asked Defendant Zacheaus Blake to find

Winston Samuel and bring him "up" along with a couple boxes of baking soda.  Berry told Blake

that he was trying to get a room.  Liburd rented a room at Club St. Croix. Berry was seen coming

from the direction of Liburd's room.

After Liburd left the room and got into the Mirage, 545 grams of crack and 245 grams of

cocaine powder were found in the Mirage.  Pots and utensils from the room that Liburd had

rented contained cocaine residue.  The jury learned that ingredients of crack included cocaine

powder and baking soda.

From this evidence, the jury could infer that Berry met with Liburd and Winston Samuel

to produce crack cocaine from cocaine powder and baking soda.  Berry's conversations indicated

that he provided the cocaine powder to make the crack.  Thus, the jury could conclude that the

crack cocaine found in the Mirage was manufactured from Berry's cocaine powder to be sold and

that Berry had given or sold a portion of his cocaine powder to Liburd or Winston Samuel for

distribution.

In Counts 4 and 5, Berry is accused of being an aider and abettor, under 18 U.S.C. § 2, as

well as a principal.  "[T]o establish the offense of aiding and abetting, the Government must

prove two elements: that the substantive crime has been committed and that the defendant knew

of the crime and attempted to facilitate it."  United States v. Frorup, 963 F.2d 41, 43 (3d Cir.

1992).   Thus, even though Berry may not have possessed the controlled substances found in the

Mirage, he facilitated Liburd's and Samuel's possession of the crack by arranging for Blake to

obtain the baking soda and by supplying the cocaine powder.  Therefore, the evidence was

sufficient to find that Berry aided and abetted Liburd and Samuel in possessing crack and cocaine

powder, as charged in Counts 4 and 5.


C.      Count 8 – Possession of Cocaine Powder with Intent to Distribute at Karen
        Blake's Residence

On October 16, 2009, Berry asked Blake to pick up "four plates" from Berry's uncle.

Blake agreed to hide them at his sister's house.  Later that night, Blake called his sister, Karen

Blake and told her that he was coming to her house.  On the morning of October 17, 2009, Blake

confirmed with Berry that he had hidden the plates.  When the law enforcement officers executed

a search warrant at Karen Blake's they found four kilos of cocaine powder.  When Blake found

out that the cocaine powder had been seized, he complained to Berry that he had warned Karen

Blake about getting the key to lock the door of the room.

From this evidence, a jury could reasonable conclude that the four kilos of cocaine

powder seized from Karen Blake's residence belonged to Berry.   Thus, Berry was in

constructive possession of such cocaine powder.  Therefore, Berry's motion for judgment of acquittal is denied as to Count 8.

        D.      Counts 10 –  Misprision of a Felony

"Concealment of crime has been condemned throughout our history."  Roberts v. United States, 445 U.S. 552, 557 (1980).  The first Congress of the United States enacted a misprision statute.  Id.  The elements of misprision of a felony are "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime."  United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002).  "[G]ross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship."  Roberts, 445 U.S. at 558.

Count 10 charges Berry with willfully concealing a controlled substance at Karen Blake's residence or aiding and abetting Karen Blake and Zacheaus Blake in concealing such controlled substance on October 16, 2005.  The controlled substance that is described in Count 10 is the same controlled substance that the jury found Berry guilty of possession of, or aiding and abetting possession of,  with intent to distribute in Count 8.  The only controlled substance that the jury learned was concealed on or about October 16, 2005 was the four kilos of cocaine powder found hidden in a room adjacent to Karen Blake's main house.

  Courts have held that a person who would otherwise be guilty of  misprision, but whose disclosure would be self incriminatory is protected from punishment by the Fifth Amendment. See United States v. Jennings, 603 F.2d 650, 652-653 (7th Cir. 1979);  United States v. Kuh, 541 F.2d 672, 677 (7th Cir.  1976);  United v. King, 402 F.2d 694, 697 (9th Cir. 1968); see also

United States v. Caraballo-Rodriguez, 480 F.3d 62, 72 (1st Cir. 2007) (recognizing that "[w]here

the person with knowledge of the underlying crime is also involved in the crime, there are

tensions between the Fifth Amendment privilege against self-incrimination and the statutory

obligation to provide disclosure").  "The privilege guaranteed by the Fifth Amendment not only

extends to statements that would in themselves support a conviction but likewise embraces those

which would furnish a link in the chain of evidence needed to prosecute the individual for a

crime, provided such individual has reasonable cause to fear he might thereby be convicted of

that crime."  King, 402 F.2d at 697.  A conviction cannot stand when "[t]he factual allegations . .

. are sufficient to engender in the defendants reasonable cause to believe that disclosing

information as to their knowledge of the (underlying 'actual commission of a felony') would

place them in the position of furnishing the government with evidence that could lead to their

prosecution or conviction."  Kuh, 541 F.2d at 677.

The Supreme Court recognizes this exception to the "citizen's duty to raise the hue and

cry and report felonies to the authorities:"

> This deeply rooted social obligation is not diminished when the witness to crime is
> involved in illicit activities himself.  Unless his silence is protected by the privilege
> against self-incrimination, . . . the criminal defendant no less than any other citizen is
> obliged to assist the authorities.

Roberts, 445 U.S. at 558  (quotation omitted).

In United States v. Jennings, 603 F.2d 650, 652 (7th Cir. 1979), the government argued

that because defendants did not participate in a particular drug sale, they would not have

incriminated themselves by reporting it.  The court reasoned that the Government failed to

consider "that defendants reasonably could have believed that their official report of the . . .

narcotics sale, and the event surrounding it, could have led to their prosecution and conviction of other, related criminal activities they did participate in." Id.   The disclosure of the narcotics sale "would have provided a link in the chain of evidence which could have led to defendants' prosecution and conviction." Id. at 653.

Berry had reasonable cause to believe that if he had reported to the authorities that he had hidden cocaine powder or had someone hide his cocaine powder on Karen Blake's property, he would be prosecuted for possession of, or aiding and abetting the possession of, the cocaine powder with intent to distribute or for other crimes.  Indeed, the jury found him guilty of possession of cocaine powder with intent to distribute, based in part, on the concealed cocaine powder.  To subject Berry to criminal liability for failing to report and concealing crimes, when such disclosure would have led to his own prosecution and conviction violates his Fifth Amendment right against self-incrimination.

Because Berry did not have a duty to notify authorities of the cocaine powder in view of his constitutional privilege against self-incrimination, his conviction of misprision of felon cannot be upheld.  Accordingly, Berry is acquitted of Count 10.

E.      Counts 27, 28, 33 and 34

When a defendant knowingly or intentionally uses a telephone to commit, cause or facilitate the commission of a drug felony, the defendant violates title 21 U.S.C. § 843(b). United States v. Johnstone, 856 F.2d 539, 542 (3d Cir. 1988).  Berry was found guilty of Counts 27, 28, 33 and 34, charging him with four separate instances of knowingly and intentionally using a telephone to commit, cause, and facilitate the commission of the offense of conspiracy to

distribute controlled substances.  "The occurrence of the underlying drug felony is a fact

necessary to finding a violation of § 843(b)" and must be proven beyond a reasonable doubt.  Id.

at 543.

As discussed in Part F. regarding Count 1, there was substantial evidence to support the

jury's verdict as to Count1, the conspiracy charge forming the underlying drug felony.  Count 27

is a telephone conversation between Berry and Blake in which Berry asks Blake to bring "five

plate of food" "down."  A law enforcement officer testified that a "plate" is a slang term for

drugs.  The "four plate of food" hidden at Karen Blake's house on October 16, 2005 and found

the following day turned out to be four kilos of cocaine powder.  Thus, the jury could reasonably

infer the Berry asked Blake to bring five kilos of cocaine powder to a particular location.  This

communication furthers the conspiracy in that it involves an attempt to form an arrangement to

transport cocaine powder.  In the telephone call of Count 28, Blake informs Berry several

minutes later that "General" will bring "it down."  This call also facilitates the conspiracy in that

it confirms that an arrangement has been cemented to transport cocaine powder.

In the telephone call of Count 33, Berry and Defendant Blaine Claxton discuss, using

slang terms, the quality and quantity of some cocaine powder that Berry received.  Claxton

explains to Berry that he will convert it to ounce quantities for distribution and makes an

arrangement with Berry to come to where Berry is located to see the cocaine powder.  Berry also

tells Claxton that he told a St. Thomas contact that he would like to introduce the contact directly

to Claxton.

Finally, in Count 34, Claxton acquiesces  to Berry's request that Claxton meet directly

with Berry's supplier so that Berry will no longer have to serve as middleman.  These two

conversations further the objectives of the conspiracy in that they involve discussions of arrangements for obtaining and distributing controlled substances.

F.      Count 1 – Conspiracy to Possess Cocaine Base and Cocaine Powder with Intent to Distribute

Berry contends that the Government failed to prove that Berry was a member of a conspiracy in that the Government showed no more than a buyer-seller relationship between Berry and Blake.  Alternatively, Berry argues that even if there was a conspiracy, it was a different conspiracy than the one alleged.   Finally, Berry draws a picture of Blake as the hub of a wheel and Berry as only one spoke, such that Berry is not a member of the conspiracy described in Count 1.

Berry does not point to any evidence that would tend to show that he had a buyer-seller relationship with Blake.  Although conversations involve Blake arranging for Berry to receive cocaine powder and Berry arranging for Blake to hide Berry's  cocaine powder, there are no conversations in which Blake and Berry discuss selling controlled substances to one another. Rather the evidence suggests that Blake and Berry were working together.  For example, Berry asked Blake to bring baking soda and Winston Samuel so that Berry could manufacture crack. On another occasion, when Blake prepared to manufacture crack, he called Berry to inform him of his plan.  Thus, the evidence shows that Berry cooperated with Blake with the objective of securing cocaine powder and distributing it or transforming it into crack for distribution.

The conspiracy alleged was a "conspiracy to secure cocaine powder and distribute it as is, or convert it to crack and distribute it, while avoiding detection by law enforcement."  Berry worked together with Blake and Claxton to further the aims of, what they termed, "the

federation."  Claxton agreed with Berry to distribute cocaine powder when Berry received it.

Berry also agreed to introduce Claxton to a supplier, so that Claxton could deal with the supplier

directly.  Claxton, Blake and Berry all worked together, in that after the Club St. Croix bust,

Claxton told Blake that Berry had no money and that the bust had caused a loss.  Finally, Claxton

also warned Berry that law enforcement officers were taking pictures of Berry's house.  From

this evidence, the jury could find that the conspiracy alleged was a single conspiracy, rather than

multiple conspiracies and that Berry participated in the conspiracy as a co-conspirator.

Finally, the relationship among Berry, Claxton, and Blake illustrate that this was not a

situation in which the only commonality between Berry and the other Defendants was that they

all participated in crimes with Blake.  Indeed, on one occasion, Berry worked with Liburd to

manufacture crack cocaine with Blake's assistance.  The co-conspirators knew each other and

worked together as a team to possess and distribute controlled substances.  Thus, the factual

circumstances here are distinguishable from the case of Kotteakos v. United States, 328 U.S.

750, 773-74 (1946), describing a rimless hub-and-spoke conspiracy.  Here, as in Blumethal v.

United States, 332 U.S. 539, 558 (1947), the conspirators "knew of and joined in the overriding

scheme" and "sought a common end, "so that "the several agreements were essential and integral

steps."  Id. at 559.

Moreover, a master conspiracy may have more than one subsidiary scheme.  United

States v. Kenny, 462 F.2d 1205, 1216 (3d Cir. 1972).  Berry's scheme to manufacture crack at

Club St. Croix ultimately advanced the objectives of the overall conspiracy to possess and

distribute cocaine powder and crack.  Therefore, although it was a subsidiary scheme it was part

of, and not separate from, the master conspiracy.

**III.   Conclusion**

For the foregoing reasons, Berry's Motion for Judgment of Acquittal is denied, except as

to Count 10, charging misprision of felony, since upholding a guilty verdict in these

circumstances would violated Berry's Fifth Amendment right against self-incrimination.


                                                ENTER:


DATE:        May 1, 2009                        _____/s/_____
                                                RAYMOND L. FINCH
                                                SENIOR DISTRICT JUDGE