# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                         )<br>              Plaintiff,                       )<br>                                                         )<br>v.                                                      )<br>                                                         )     CIVIL NO. 2006/0030<br>KALIF BERRY,                              )<br>                                                         )<br>              Defendant.                  )<br>_____) | |

## MEMORANDUM OPINION

Finch, Senior Judge

THIS MATTER comes before the Court on the Government's Motion for Review / Revocation of Release Order filed on July 23, 2009. Defendant Kalif Berry asserted before the Magistrate Judge that he is not likely to flee, that his release would not pose a danger to the safety of any other person or the community and that his Fifth Amendment right to due process is being violated by his continued detention. On July 23, 2009, the Magistrate Judge ordered Berry's release. The Government seeks review of the Magistrate Judge's release order pursuant to 18 U.S.C. § 3145(a). The Court held a hearing on the Government's motion on August 5, 2009.

### I.     History of Berry's Efforts to Obtain Pre-trial Release

Berry, Winston Samuel and St. Clair Liburd were arrested on October 15, 2005. The Government moved to detain Berry on October 19, 2005. Crim. No. 05-63, Dkt. No. 11. The Magistrate Judge held a hearing on such motion beginning on October 20, 2005 and continuing on October 21, 2005. The October 21, 2005 portion of the detention hearing was transcribed. Transcript, Crim. No. 05-63, Dkt. No. 64. Berry's uncle, Edward Berry, and the mother of two

of Berry's children, Donna Miller, testified *inter alia*, that Berry is not a danger to the community. Both Edward Berry and Donna Miller were also offered as third-party custodians. Edward Berry agreed to post property belonging to Kalif Berry's grandfather with an approximate value of $100,000. Despite such testimony, the Magistrate Judge found, on October 24, 2005, that "Defendant failed to rebut the presumption that Defendant presents a danger to any person of the community." Crim No. 05-63, Dkt. No. 18. In conformance with the recommendation of the Office of Probation Pretrial Services, the Magistrate Judge granted the Government's motion to detain Berry. Id.

On November 1, 2005, Berry appealed the Magistrate Judge's Order detaining Berry. Crim No. 05-63, Dkt No. 28. This Court held a hearing on such appeal beginning on January 5, 2006 and *sua sponte* reopened such hearing on January 10, 2006. This detention hearing has been transcribed in its entirety. Crim No. 05-63, Dkt. Nos. 65, 66. On January 5, 2006, the two witnesses who appeared on October 21, 2005 essentially repeated their previous testimony. In addition, Berry's sister, Stephanie Berry testified that Berry does not present a danger to the community and agreed to serve as an additional third-party custodian. Stephanie Berry offered to post property valued at roughly $50,000. Raphaela Weiner, a Qualified Safety Manager with HOVENSA, who has known Berry since he was young and considers him a very good friend testified that Berry is not a danger to the community.

On January 10, 2006, a police officer testified that on March 18, 2005, Berry was arrested for wearing a bulletproof vest which, according to the police officer, looked exactly the same as those worn by police officers. Berry's Probation Officer testified that the Office of Probation did not experience any problems with Berry while he was on pre-trial release following this arrest –

2

he called the Probation Office every day, appeared in court, and was not arrested for any additional crimes during this period.

Edward Berry indicated that Berry's grandfather would not be available to secure Berry's bail, but Berry proffered that his uncle, Francisco Davila, would offer his property valued at $45,000. Berry also offered his own property valued at $17,000. The value of the property that Stephanie Berry offered was determined to be $19,000. The total assessed value of the property proposed to be posted for bond was $81,000.

On January 10, 2006, this Court affirmed the Magistrate Judge's denial of Berry's release in part because Berry had been wearing a bulletproof vest. The Court reasoned: "Defendant was either wearing a bulletproof vest because he felt that his life was already at risk or because he anticipated engaging in activities that would jeopardize his safety." Crim No. 05-63, Dkt No. 50. On January 19, 2006, Berry appealed this Court's affirmation of the Magistrate Judge's Order to the Third Circuit Court of Appeals. Crim. No. 05-63, Dkt. No. 54. Following the dismissal of the Indictment in Crim No. 05-63 on March 13, 2006, the Third Circuit Court granted Berry's Motion for Voluntary Dismissal of the appeal. Crim No. 05-63, Dkt. No. 67.

On March 9, 2006, Berry was arraigned on the Indictment filed in Crim. No. 06-7. The Magistrate Judge held a detention hearing. Stephanie Berry, Donna Miller, and Edward Berry repeated and reaffirmed their previous testimony. Berry's sister, Francis Benjamin was called for the first time and testified that she did not consider Berry to be a danger to the community. Each witness also testified that Berry's being arrested for wearing a bulletproof vest did not affect their opinion that Berry does not present a danger to the community.

Stephanie Berry offered to post two pieces of property valued at $19,500 and $22,500,

respectively. Berry again proffered Francisco Davila's property and his own property for bond. The Magistrate Judge awaited Berry's submission of the transcripts of the previous detention hearings held in Crim. No. 05-63 before reaching his decision.

Before Berry had submitted such transcripts, on September 28, 2006, Berry was arraigned on the Indictment filed in Crim. No. 06-30. The Magistrate Judge held a hearing on October 2, 2006 on the Government's motion to detain Berry. Berry presented no new evidence at such hearing, but relied on his previous submissions.

On October 3, 2006, the Magistrate Judge granted the Government's motion to detain Berry. Crim No. 06-30, Dkt. No. 42. The Magistrate Judge found that Berry posed a flight risk and that he had failed to rebut the presumption that he presented a danger to the community. The Magistrate Judge also weighed various factors to determine whether Berry's due process right would be violated by his continued detention. The Magistrate Judge considered that the government's case was strong, that the length of detention was not excessive given the complexity of the case, and that neither side had added needlessly to the complexity or delay. Finally, the Magistrate Judge reasoned that an additional eight weeks of detention until the start of trial would not be punitive.

Berry immediately filed a Notice of Appeal. Although a hearing was scheduled on such appeal, the hearing did not go forward.

On March 30, 2007, Berry orally moved for reconsideration of the Magistrate Judge's detention order. Donna Miller and Stephanie Berry repeated their previous testimony and were so adamant in their beliefs that Berry does not present a danger to the community that they refused to consider Berry's possible culpability in the charged conduct as affecting their views.

The Government argued that their steadfast opinions showed them to be biased and their testimony to be unreliable.

Following the detention hearing, on March 30, 2007, the Magistrate Judge granted Berry's motion for release, but stayed such release until Berry could identify an appropriate third-party custodian. Crim No. 06-30, Dkt. No. 313. The Magistrate Judge held that continuing to detain Berry would violate his right to due process since trial had been delayed an additional four months since the October 3, 2006 Order, and that "while some of the delay in bringing this matter to trial is attributable to the multiple defendants, . . . the government is responsible for the majority of the delay due to the volume and nature of the evidence." Id. The Government immediately filed a Motion for Review/Revocation of Release and the Magistrate Judge stayed Berry's release until this Court had an opportunity to hear the Government's appeal. Crim. No. 06-30, Dkt. No. 316, 317.

Berry remained in detention while this matter was tried in April 2007. The jury found Berry guilty on all counts. Crim. No. 06-30, Dkt. No. 406.

On December 15, 2008, the Court granted Defendants' Motion for a New Trial. Berry filed a Renewed Motion for Pre-Trial Release on December 24, 2008. The Magistrate Judge heard such motion on January 15, 2009. Donna Miller's niece, Emily Odom, age 21, and Odom's boyfriend, age 24, both of whom were new to St. Croix and were residing with Donna Miller, offered to serve as Berry's third-party custodians. On January 16, 2009, the Magistrate Judge vacated his previous order granting Berry's release and ordered him detained. The Magistrate Judge explained this reversal as follows:

> As is clear from the contents of the order, the Court's Order Granting Defendant

> Berry's Motion for Release (Docket No. 313) was based upon its finding that continued detention would violate said Defendant's due process rights. Because of the procedural posture of this matter at this juncture, however, the Court finds that constitutional due process is no longer a consideration.

Crim No. 06-30, Dkt No. 639 at 2-3.

Berry appealed on January 22, 2009. On February 2, 2009, this Court affirmed the Magistrate Judge's decision for the reasons stated by the Magistrate Judge and because the Court was not satisfied with the proposed third-party custodians. Crim. No. 06-30, Dkt. No. 656.

On March 4, 2009, Berry again moved for pre-trial release. The Magistrate Judge held a hearing on such motion on March 12, 2009. Francisco Davila offered to serve as Berry's third-party custodian. The Magistrate found that "this Defendant has failed to produce any 'new evidence' pursuant to 18 U.S.C. § 3142(f) sufficient to re-open the issue of detention" and denied Berry's motion. Crim No. 06-30, Dkt No. 673.

The case went to trial a second time in June 2009. During trial, Berry moved to sever. The Court initially denied the motion to sever. However, when Berry moved for a mistrial at the close of the Government's evidence, the Court granted the motion on June 17, 2009.

On June 24, 2009, Berry moved for his release once again. He relied on the previous testimony, but documented that the assessed value of the property that Francisco Davila would put up for bail is $116,300 and that the assessed value of Berry's own property is $17,600. Crim No. 06-30, Dkt. No. 803-3. The Magistrate Judge held a hearing on Berry's motion on July 21, 2009 and ordered his release on July 23, 2009. The Magistrate Judge found that "Defendant's 'detention on the ground of dangerousness has degenerated into punishment prior to an adjudication of guilt.'" Crim. No. 06-30, Dkt. No. 832 at 5 (quotation omitted). He reasoned

6

that, although Berry's release was not free of all risk that he would attempt to engage in drug trafficking, Berry could "no longer be detained within constitutional limits." Id. at 6 (quotation omitted).

The Government immediately moved for a stay, which this Court granted. On August 5, 2009, the Court heard the Government's Motion for Review / Revocation of Release. The Court *sua sponte* requested that the Government provide supplemental information concerning Berry on August 26, 2009. The Government complied on September 2, 2009.

## II. Standard of Review

When the Government moves for revocation of a release order entered by the Magistrate Judge, this Court determines such motion *de novo*. See United States v. Delker, 757 F.2d 1390, 1394-95 (3d Cir. 1985). The Court must "fully explain[] the result it reach[es] and the reasons for it." Id. at 1395.

## III. Burden of Proof

Under the Bail Reform Act of 1984, enacted as part of the Comprehensive Crime Control Act of 1984, codified as 18 U.S.C. § 3141 *et seq.*, when the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must "order the detention of the person prior to trial." 18 U.S.C. § 3142(e)(1). A rebuttable presumption arises that no such condition or combination of conditions exists when "there is probable cause to believe that the person committed ... an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, (21 U.S.C. § 801 *et seq.*)." 18 U.S.C. §

7

3142(e)(3)(A). "[T]he indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). The parties do not dispute that the charges with which Berry has been indicted trigger the rebuttable presumption.

"The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). Although the burden of persuasion remains with the government, Suppa, 799 F.2d at 119, "[t]he clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness," United States v. Perry, 788 F.2d 100, 115 (3d Cir. 1986). When the defendant produces sufficient evidence to rebut the risk of flight presumption, the government must demonstrate risk of flight by a preponderance of the evidence. United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986).

IV. **Constitutional Concerns**

The Due Process Clause of the Fifth Amendment of the United States Constitution provides that "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Congress has made the Fifth Amendment applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561.

"[T]he mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746-47 (1987); cf Perry, 788 F.2d at 109 (considering pretrial preventive detention imposed for the

"safety of the community" to be essentially civil commitment). The Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." Salerno, 481 U.S. at 748; see also Perry, 788 F.2d at 113 (holding that substantive due process is not violated by detaining "persons found to be dangerous in a very real sense; distributors of dangerous drugs and users of firearms in the commission of crimes of violence").

Indeed, Congress has specifically found that individuals who have been arrested for extremely serious offenses "are far more likely to be responsible for dangerous acts in the community after arrest." Salerno, 481 U.S. at 750. According to the Supreme Court, "[w]hile the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest." Id.

The Supreme Court, however, has left open the question "as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive." Id. at 748 n.4. Rather than drawing an arbitrary line "regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial," the Third Circuit in United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986) identified factors relevant to such a determination. The factors that the Court should consider are (1) "the seriousness of the charges," (2) "the strength of the government's proof that defendant poses a risk of flight or a danger to the community," (3) "the strength of the government's case on the merits," (4) "the length of the detention that has in fact occurred," (5) "the complexity of the case," and (6)

9

"whether the strategy of one side or the other has added needlessly to that complexity." Accetturo, 783 F.2d at 388.

## V. Whether Berry's Continued Detention Violates his Constitutional Rights

The Court will address the factors adopted in Acceturo as they apply in this case, seriatim:

### A. Accetturo Factors

#### 1. Seriousness of the Charges

Berry is charged with conspiracy to possess crack cocaine and cocaine powder, with intent to distribute, possession of crack cocaine and cocaine powder with intent to distribute, and use of a telephone to facilitate drug felony. These are serious charges.

#### 2. Proof Concerning Risk of Flight and Danger to the Community

Berry has produced sufficient evidence to rebut the presumption that he presents a flight risk. After considering relevant factors, "including the nature and circumstances of the offense charged, the weight of the evidence against the person, and the history and characteristics of the defendant," Himler, 797 F.2d at 161, the Court finds that the Government has not met its burden of persuasion.

Berry has strong ties to the community. He has lived in St. Croix for all but two years of his life. The mother of two of his children lives in St. Croix with the two children. Four of Berry's six sisters and brothers live in St. Croix. Berry owns property in St. Croix. That Berry's family and he would lose their property posted for bond is a powerful disincentive for flight.

Although the case against him is strong, Berry has already served a significant time in

detention. He would be given credit for this time at sentencing. Thus, he has less to gain by fleeing than he would have if he knew he might have to face the full period of incarceration. Moreover, Berry's counsel appears to be convinced that Berry will be vindicated at trial.

During the course of Berry's criminal history, he has never failed to appear as required. Not that the Court places much weight on the conduct of others, to the Court's knowledge, Berry's Co-defendants have also reported regularly to the Office of Probation and have made their court appearances.

The Government contends that Berry will flee because he ran to avoid apprehension on October 15, 2005. That he sought to rid himself of incriminatory evidence and avoid arrest bears little on whether he would submit to the Court's authority once having been indicted.

The Government has not shown by a preponderance of the evidence that Berry presents a flight risk. Thus, this factor weighs in favor of his release.

Danger to the community is presumed in this case by the very nature of the offense commmited. See United States v. Coleman, 777 F.2d 888, 893-94 (3d Cir. 1985) ("The seriousness with which Congress viewed drug offenses is evident throughout the Bail Reform Act, where commission of a drug offense is frequently equated with danger to the community."). Therefore, the burden is on Berry to produce evidence to establish lack of dangerousness. See Perry, 788 F.2d at 114.

Berry's siblings, Stephanie Berry and Francis Benjamin, the mother of two of his children, Donna Miller, a long-time friend, Raphaela Weiner, and his two uncles, Edward Berry and Francisco Davila, testified that Berry does not present a danger to the community. Stephanie Berry and Francisco Davila are willing to post their property to secure Berry's release. Although

11

the properties are not as high in absolute value as the million dollars in property offered in United States v. Carbone, 793 F.2d 559, 561 (3d Cir. 1986), their relative value to their owners is a strong indication that these owners are vouching for Berry's character. The Court finds that Berry has met the burden of production. Suppa. 799 F.2d at 120 ("[T]he type of evidence that might be adequate to rebut the presumption" includes 'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'" (quotation omitted)). This places upon the Government the burden of proving by clear and convincing evidence that Berry presents a danger to any person or the community. Perry, 788 F.2d at 115.

After a jury trial in the Territorial Court of the Virgin Islands, Berry was convicted in 1999 of third degree assault, reckless endangerment and possession of a dangerous weapon during a violent crime. Berry was charged in a separate Territorial Court matter of first degree assault, possession of a deadly weapon during the commission of a crime of violence, unauthorized possession of a firearm and simple possession of a controlled substance. He pled guilty to failure to register a firearm. He was sentenced to concurrent terms in these two cases for a total term of imprisonment of five years. As a juvenile, Berry was arrested for attempted robbery and aggravated assault and battery. He was remanded to the Youth Rehabilitation Center for two years.

In 2005, Berry was arrested for wearing a bulletproof vest. The evidence repeated at the two trials already held in this matter included the discovery of bulletproof vests hidden with firearms in Karen Blake's house. Karen Blake's brother, Zacheaus Blake, who is Berry's close friend and alleged co-conspirator, allegedly had secreted such vests and firearms.

While Berry was in pre-trial detention in October 2005, Berry continued his criminal activities. He called Zacheaus Blake on a cellphone which he was not allowed to possess in prison, and instructed Blake to hide four items using a slang term which the Court interprets as meaning four kilos of cocaine. Four kilos of cocaine were discovered the following day at Blake's sister's house. The Court deduces that this is the same contraband that Berry asked Blake to conceal.

The evidence presented at trial demonstrated that, on October 15, 2005, Berry was involved in manufacturing crack cocaine at Club St. Croix, together with Winston Samuel and St. Clair Liburd. All three were arrested. Berry's telephone conversations, recorded while he was at Guaynabo in December 2005, reveal that Berry was actively seeking the release of Winston Samuel. When he learned that Samuel had been released, Berry's tone of voice showed that he was pleased. Berry said to Donna Miller, "Glad that motherfucker get out of jail. That weak-ass motherfucker!"

In February 2006, Berry and Miller spoke again about Samuel, referring to him by his nickname, "Bamboo":

| | |
|---|---|
| Miller: | You hear about that man? |
| Berry: | No, I . . . expecting for you to tell me something. |
| | Brief Pause |
| Berry: | Who? |
| Miller: | Um. . . Bamboo. |
| Berry: | No? |
| Miller: | Lights out, man! |

Although not without some ambiguity, it appears that Berry was waiting for new from Miller about Samuel.

A Golden Grove Corrections Officer caught Berry with a cellphone and marijuana on

13

November 3, 2006 while Berry was detained. Berry was charged in District Court Crim. No. 06-46 on December 19, 2006, with two counts of possession of contraband in prison and possession of marijuana with intent to distribute.

The Corrections Officer was murdered outside his home on September 30, 2007, shortly before the scheduled trial date of November 19, 2007. Berry, rather than his counsel, drafted a motion to dismiss the Indictment, arguing that the Government's case hinged on the testimony of the Corrections Officer. In light of the death of this key witness, the Government moved for dismissal of the Indictment.

While the evidence concerning the murders of Samuel and the Corrections Officer does not clearly or convincingly point to Berry, it gives the Court pause. Obviously, a defendant who is complicit in action leading to the death of a witness against him poses a significant danger and should be detained before trial. United States v. Coleman, 777 F.2d 888, 894 (3d Cir. 1985).

In the present matter, clear and convincing evidence shows that Berry participated in arranging the use of a hotel room where Samuel, Liburd, and he could manufacture crack cocaine from cocaine powder. Berry exited the room with 75 grams of crack and 19 grams of cocaine powder, which he discarded as he ran from law enforcement officers. Liburd and Samuel left the room and got into a vehicle in which 545 grams of crack and 245 grams of cocaine powder were found. Berry facilitated Liburd's and Samuel's possession of these substances as an aider and abettor. As mentioned earlier, Berry also constructively possessed the four kilograms of cocaine powder that were discovered at Karen Blake's house. Finally, this evidence, together with the phone calls among Berry and others, shows that Berry conspired with others to possess, with intent to distribute, crack cocaine and cocaine powder.

The Government has shown by clear and convincing evidence that Berry poses a danger to the community. Berry has a violent criminal history, that begins when he was a juvenile. The quantity of crack cocaine and cocaine powder attributable to him, along with his participation in a drug trafficking conspiracy, demonstrates that his detention is necessary to reasonably assure the safety of the community.

### 3. Strength of the Government's Case

The Court, having heard the Government's case twice, finds that it is very strong. The Court denied Berry's motion for judgment of acquittal following the Government's presentation of evidence at the first trial. The evidence at the second trial was similar to that presented at the first trial and the Court has no reason to believe that the evidence at the third trial would be significantly different. The weight of evidence against Berry, highlighted in the discussion of Berry's dangerousness to the community, is substantial.

### 4. Length of Past and Anticipated Detention

Berry has been detained for almost four years – since his arrest on October 15, 2005. This factor weighs heavily in favor of Berry's release. An appeal is presently pending before the Third Circuit Court of Appeals and the Court anticipates additional appeals. Therefore, it is difficult to predict when trial will occur.

### 5. Complexity of the Case

Complexity inherent in a multiple defendant matter with voluminous telephone records resulted in earlier delays. However, those complexities have been largely resolved and are not

expected to be responsible for any further delay.

### 6. Responsibility for Needless Complexity or Delay

Berry was fully aware for over two years that the Government intended to proceed at trial with two firearm counts. From the Rule 16 discovery provided to Berry, and the evidence adduced at the first trial, Berry could anticipate the evidence that the Government would use against him. He had reason to believe that the Government would not be able to link him to the firearms. Nevertheless, rather than move pre-trial for a severance, he waited until trial commenced and the jury was made aware of the firearm charges to move to sever the firearm counts.

On the other hand, the Government's decision to join the firearm charges with the remaining counts was never challenged during the first trial. Therefore, the Government had no reason to anticipate that such joinder would be challenged during the second trial.

Thus, the Court finds that Berry is more responsible than the Government for this most recent delay. Berry should have foreseen that the timing of his motion could result in a mistrial, which would delay his trial and could continue his detention.

## VI. Conclusion

"[T]he constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight. In the former case, release risks injury to others, while in the latter case, release risks only the loss of a conviction." United States v. Orena, 986 F.2d 628, 631 (2d Cir.1993). The factor in this

case that weighs most heavily in favor of Berry's release is the length of his detention. Yet the length of the detention "will rarely by itself offend due process." Orena, 986 F.2d at 631.

The Court has reviewed all of the evidence presented before the Magistrate Judge, as well as allowed the parties to present any additional evidence. After considering the factors outlined in Accetturo *de novo*, the Court concludes that Berry is charged with serious crimes, the Government has proven by clear and convincing evidence that Berry presents a danger to the community, the Government's case against Berry is strong, and Berry is more at fault for the present delay than the Government. Under these circumstances, Berry's continued detention does not violate his Fifth Amendment constitutional right to due process.

ENTER:

DATE:    October 9, 2009

_____
Honorable Raymond L. Finch
Senior District Judge

17