IN THE UNITED STATES DISTRICT COURT FOR THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | No. 06-30 |
| KALIF BERRY, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                        **June 18, 2010**

Defendant Kalif Berry asks this Court to dismiss the charges against him pursuant to the Double Jeopardy Clause of the Fifth Amendment, arguing the Government goaded him into moving for a mistrial during his second trial. Three of Berry's co-defendants, St. Clair Liburd, Blaine Claxton, and Randy Simon, seek to join Berry's his motion. Because this Court finds the Government did not intentionally provoke a defense motion for mistrial, Berry's motion and the motions of his co-defendants are denied.

**FACTS**[1]

In August 2005, Virgin Islands law enforcement agents began monitoring the telephones of defendants Zacheas Blake and Blaine Claxton. On October 15, 2005, agents intercepted a phone call between Blake and Berry, during which Berry asked Blake to bring Winston Samuel and two boxes of baking soda to a room. Agents inferred this communication meant Berry intended to rent a room in which to cook crack cocaine, a process which utilizes baking soda as a key ingredient. Agents

---

[1] This Court's factual recitation derives from the pleadings filed by the Government and Defendants; the fact of Defendants' guilt has not been found by a jury, nor is this Court making a finding regarding the veracity of these facts. The background of this case is helpful in that it outlines the facts the Government will attempt to prove at trial, and therefore is relevant to this Court's Double Jeopardy analysis.

1

began searching for Blake, Berry, and Samuel on the island of St. Croix. Later in the day on October 15, 2005, law enforcement agents observed Blake driving a car and followed him to Club St. Croix. At the Club, agents saw Liburd and Samuel exit an apartment, Room 110. Both men were stopped and searched. Agents recovered cocaine base and drug paraphernalia on their persons. A few minutes later, Berry exited the same apartment and, upon seeing police officers, fled. Police apprehended him nearby. During a search of Berry, officers discovered cash and a key to Room 110. After obtaining a search warrant for Room 110, agents uncovered pots, pans, and spoons containing cocaine residue, which they believed had been recently used to make crack cocaine. Near the location where Berry fled from police, agents also found cocaine base, a cellular phone, and an umbrella Berry had carried.

Following Berry's arrest, he made a phone call from jail to Blake, telling him to move "four plates of food" to the apartment of Blake's sister, Karen Blake. Govt's Opp. To Mot. to Dismiss, at 4. Agents intercepting this call believed Berry was instructing Blake to move four kilos of cocaine. Agents obtained a search warrant for Karen Blake's residence, and the search revealed four kilos of cocaine.

The first trial of Berry and his co-defendants began on April 11, 2007. After a five-week trial, Berry was convicted on 17 drug distribution-related counts. His co-defendants were also convicted on drug distribution and conspiracy charges. Following his trial, however, Berry discovered one of the jurors had previously been seated on another jury in which Berry was the defendant and in which he was convicted. He moved for a new trial under Federal Rule of Criminal Procedure 33, and his motion was granted on December 15, 2008. The trial judge also granted

Berry's co-defendants' motions for new trials because of the possibility of prejudice created by the juror's presence at the trial.

Prior to the second trial, Karen and Zacharias Blake moved for a judgment of acquittal on a number of charges. Most significant to this Court's analysis, the Blakes requested acquittal for Count 13 of the Indictment, charging each of them with possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I). In granting the Blakes' motion for acquittal on this count, the judge ruled there was not a sufficient nexus between the firearms found at Karen Blake's house and the drug conspiracy charged in the remainder of the indictment.[2] The court did not grant the Blakes' motion for acquittal on their other firearm-related charges, Counts 18 and 14 of the Indictment, charging them with unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a).[3]

On May 19, 2009, the Government filed a Second Superseding Indictment. This indictment omitted the § 924(c) charges pursuant to the court's grant of acquittal on such charges, but continued to include language in Count I which referenced the use of firearms in connection with the drug conspiracy. The Second Superseding Indictment reads: "Defendants utilized various means to achieve the goals of the conspiracy. For example they: . . . 5) Possessed and secreted firearms and bullet proof vests in order to protect the illegal drug trafficking enterprise." Second Superseding

---

[2] The court found the Government failed to produce any evidence the firearms hidden at Karen Blake's house were there to protect a cocaine cooking operation or to guard stored cocaine at the house. Mem. Op. on Karen Blake's Mot. for Judg. of Acquittal (Doc. 695); Mem. Op. as to Zacheas Blake's Mot. for Judg. of Acquittal (Doc. 698).

[3] The court found the Government "introduced substantial evidence from which a jury could determine beyond a reasonable doubt that each of the elements of unauthorized possession of the firearms [at issue]" had been met. Mem. Op. (Doc. 695), at 10; Mem. Op. (Doc. 698), at 7.

3

Indictment, at 4. The Indictment also stated: "Defendant Zacheas Blake, during the period of the conspiracy, stored two firearms at the house of defendant Karen Blake." *Id.* at 5. Zacheas Blake moved to strike from the indictment language regarding his possession and secretion of firearms. His motion was denied.

Berry contends that, after dismissal of the Blakes' § 924 charges, he contemplated a pretrial motion to sever his second trial from that of the Blakes. Berry did not want to be tried with the Blakes because the Blakes were charged with firearm offenses and Berry was not, and he worried introduction of firearm evidence at his trial would unfairly prejudice him. Berry did not make a pretrial motion to sever, however, because of Count 1 of the indictment stated that "possess[ion]" and "secret[ion]" of firearms was one method by which defendants achieved their conspiracy. Based on the continued presence of this language in the Second Superseding Indictment, Berry asserts he assumed the Government had uncovered new evidence which connected firearms to the drug conspiracy. He made this assumption because, in light of the court's previous ruling that the Government had not shown firearms were connected to the drug conspiracy, he did not believe the Government would attempt to include such evidence at the second trial unless there was newly discovered firearm evidence which was not introduced at his first trial. Berry, however, did not ask the Government for an offer of proof regarding such evidence, nor did he request that any discovery materials related to newly uncovered firearm evidence be turned over. Berry states he never requested additional discovery because he believed such a request would have been improper.

The second trial of Berry and his co-defendants began on June 1, 2009. Berry contends the Government's opening statement made it apparent the prosecutor had no new evidence connecting any firearms to him or to the other co-defendants charged in the alleged drug conspiracy. On June

4

8, 2009, Berry filed a mid-trial motion in limine to preclude introduction of evidence concerning firearms, bullet proof vests, and police uniforms found in Karen Blake's home, arguing such evidence was not relevant, and, even if it was, the probative value of such evidence was outweighed by its prejudicial effect to Berry.[4] The docket does not reflect whether the Court ruled on this motion.

The same day Berry filed his motion in limine, he filed a Motion to Sever Defendants and Declare Improper Joinder of Co-Defendants on Counts 11 and 12. Karen Blake also filed a motion to sever her trial from that of her co-defendants.[5] In support of his motion, Berry argued the Blakes' territorial firearms charges were improperly included in his indictment, as there was not a nexus between the Blakes' illegal possession of firearms and the drug conspiracy charges for which Berry was charged. Berry argued severance was the only appropriate remedy to cure the prejudice to Berry of the introduction of firearms evidence as part of his joint trial with the Blakes. He contended "a defendant is entitled to severance when the evidence against one defendant cannot be compartmentalized and the jury is likely to consider [such evidence] to the prejudice of a defendant against whom it is not properly directed." Mot. to Sever (Doc. 769), at 5 (citing *United States v. Inigo*, 925 F.2d 641, 655 (3d Cir. 1991)). The Government opposed Berry's motion to sever, arguing joinder of Counts 11 and 12 against the Blakes was not prejudicial and was, in fact, preferable.[6] The

---

[4] Berry argued inclusion of this evidence would "paint [him] in a violent and deceptive light." Mot. in Limine (Doc. 768), at 3. He further stated the evidence would "lead the jury to believe [he] took part in numerous uncharged violent, deceptive, and anarchy related incidents and offenses in the past." *Id.*

[5] Karen Blake argued, conversely, that joining her trial for territorial weapons offenses with that of her co-defendants facing drug conspiracy charges improperly prejudiced her before the jury. *See* Mot. to Sever (Doc. 766).

[6] The Government argued joinder of the Blakes' charges in this matter served the interest of judicial economy and "the interests of justice by avoiding scandal and inequity of inconsistent verdicts." Gov't's Opp. to Berry's Mot. to Sever (Doc. 776), at 2 (citing *United States v. Silveus*,

Government further argued there was a sufficient nexus between the Blakes' charges and Berry's charges to justify inclusion of the Blakes in the indictment.[7] The Government further argued a sufficient limiting instruction could cure the prejudice of offering firearm evidence at Berry's trial, and suggested that compartmentalizing the firearm evidence against the Blakes from the drug conspiracy evidence against Berry and his co-defendants would be a simple matter for the jury.

The court construed Defendants' mid-trial motions to sever as motions for a mistrial. After consideration of the motions, the court held that because Counts 11 and 12 are substantive offenses that arose out of the drug conspiracy, they were properly joined with Count 1 as to Zacheas Blake. The court also found that because the substantive firearms offenses were listed as overt acts of the drug conspiracy, the same evidence was necessary to prove both the Blakes' firearm offenses and the existence of the drug conspiracy. Accordingly, the court found joinder as to the defendants charged in Count 1 – Blake, Berry, Liburd, Simon, and Claxton – was not prejudicial. The court noted, however, that Karen Blake was not charged in Count 1 of the indictment and stated that "a mistrial [as to Karen Blake] would only be appropriate if the Government fails to prove that the manufacturing and storing of controlled substances charged in Counts 2, 3, and 9 is connected with the storage of firearms charged in Count 11 [against Karen Blake], as part of a common scheme or

---

542 F.3d 993, 1005 (3d Cir. 2008)).
[7] The Government alleged Berry, Zacheas Blake, and Karen Blake participated in the same series of transactions which provided the evidentiary basis for Count 10 of the indictment, which charges cocaine possession. As part of its chain-reaction theory of nexus, the Government argued the seizure of cocaine charged in Count 10 triggered statements made by Blake, and such statements led to a search and seizure, which recovered the firearms charged in Count 11. Furthermore, the Government argues the seizure of firearms charged in Count 11 led to a further search, in which the firearms charged in Count 12 were seized. The Government suggests that "[a]ccordingly, the firearm charges in Counts 11 and 12 are both connected to, and part of the same transaction or series that constituted the possession of cocaine charge against Berry in Count 10." Gov't's Opp. to Berry's Mot. to Sever (Doc. 773), at 3.

plan." Order on Mots. to Sever, Doc. 783, at 3-4. The court, accordingly, denied Defendants' motions to sever.

At the close of the Government's evidence, however, the court found the Government failed to show any connection between the Blakes' firearms and the other defendants' participation in a drug trafficking conspiracy. The court ruled that Counts 11 and 12, charging the Blakes with territorial firearms offenses, constituted "retroactive misjoinder" as to Berry, Simon, Claxton, and Liburd. Order of June 17, 2009, Doc. 796, at 1. The court further found the Government's introduction of firearm evidence at trial was unduly prejudicial and such prejudice could not be cured with a limiting instruction to the jury. Holding that Berry, Simon, Claxton, and Liburd were prejudiced by being associated with firearms stored with bullet proof vests, police shirts, and ski masks, the court granted the four Defendants' motion for a mistrial. The Government intends to reprosecute the Defendants.

**DISCUSSION**

Berry now asks this Court to dismiss the charges against him, arguing the Double Jeopardy Clause of the Fifth Amendment bars the Government from trying him a third time on the same charges. Simon, Claxton, and Liburd join in Berry's motion to dismiss.

The Fifth Amendment's Double Jeopardy clause protects individuals from being tried twice for the same offense. U.S. Const. Amend V. Generally, when a defendant successfully moves for a mistrial, it does not bar re-prosecution under the Double Jeopardy Clause. *See Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). An exception to this general rule exists "where the prosecutor's actions giv[e] rise to the motion for mistrial [and such actions] were done 'in order to goad the defendant into requesting a mistrial.'" *Id.* (internal alterations and citations omitted). This rule bars retrials

7

where a prosecutor's bad faith actions force a defendant to choose between continuing in a trial tainted by prosecutorial misconduct or requesting a mistrial based on such misconduct. *See United States v. Dinitz*, 424 U.S. 600, 608-09 (1978).[8]

Berry argues the intentional prosecutorial misconduct here is threefold, stating the Government took the following actions to force a motion for mistrial: (1) the Government improperly joined the Blakes' territorial firearms charges in the Second Superseding Indictment following dismissal of the Blakes' § 924 charges; (2) the Government's Second Superseding Indictment improperly stated that the defendants "[p]ossessed and secreted firearms and bullet proof vests" as part of their ongoing drug trafficking conspiracy; and (3) the Government introduced firearms evidence at Berry's second trial. Berry suggests these actions constituted misconduct in light of the trial court's ruling that the Government could not prove a sufficient nexus between the firearms at issue in this case and the alleged drug conspiracy. Berry argues these Government actions enabled the Government to enter prejudicial evidence against Berry and his co-defendants with no risk, because if any defendant protested such evidence by successfully moving for a mistrial, the Government gained the opportunity to reprosecute the case with the benefit of newly gained insight into the defense strategy.

When the trial court granted a mistrial as to Berry, Simon, Claxton, and Liburd, it held that continued joinder of the Blakes in the Second Superseding Indictment and introduction of firearms evidence at the second trial were both improper. This Court adopts this holding as part of the law

---

[8] After a criminal trial begins, if the Government decides its case is going poorly, a prosecutor cannot dismiss the case for another shot at prosecution. Similarly, under the rule announced in *Kennedy*, the Government is unable to seek re-prosecution by engaging in trial misconduct that precipitates a successful motion for mistrial by the defendant. *See United States v. Oseni*, 996 F.2d 186, 187-88 (7th Cir. 1993).

of the case. Since a determination has been made that a prosecutor's actions prejudiced a defendant and constituted sufficient grounds for mistrial, this Court must now decide whether such prosecutorial misconduct was intentionally done to "goad" the defendant into moving for a mistrial. *See United States v. Barnard*, 318 Fed. Appx. 143, 145 (3d Cir. 2009) (citing *Kennedy*, 456 U.S. at 676) (citations and alterations omitted). If so, reprosecution of Berry and his co-defendants following the mistrial will be barred. *Id.* (citing *United States v. Perlaza*, 439 F.3d 1149, 1173 (9th Cir. 2006)).

To determine whether the prosecutor had the subjective intent to goad a defendant into moving for a mistrial, this Court must consider the following factors, enunciated by the Third Circuit in *United States v. Curtis*: "(1) whether the record contains any indication that the prosecutor believed the defendant would be acquitted; (2) whether a second trial would be desirable for the Government, and (3) whether the prosecutor justified his [improper] remarks to the trial court." *United States v. Curtis*, 683 F.2d 769, 777 (3d Cir. 1982). The Government contends it did not intentionally goad Berry to move for a mistrial and argues application of the three *Curtis* factors reveals the prosecutor did not intentionally provoke Berry to move for a mistrial. Berry argues all three *Curtis* factors apply to the prosecutor's conduct in his second trial.

First, Berry contends the trial record reveals the prosecutor believed Berry and his co-defendants would be acquitted because of weaknesses in the Government's case. Berry contends the Government's witnesses had contradicted themselves and been discredited through harrowing cross-examination and the jury had enough evidence to reasonably believe law enforcement agents planted

9

or manipulated evidence to inculpate Berry.[9] The Government argues it had no reason to believe Berry would be acquitted, particularly because he was convicted at his first trial on the same charges, and because the evidence against Berry was overwhelming. This Court finds nothing to suggest the prosecutor believed Berry would be acquitted. The evidence the Government presented at trial was strong. Although defense counsel may have cast substantial doubt on the legitimacy of inculpatory evidence dicovered at the scene of Berry's arrest, the Government's case also included an intercepted prison phone call in which Berry instructed Zacharias Blake to move four "plates of food," which government agents believed to be cocaine, to Karen Blake's home. A search of Blake's home, conducted pursuant to a valid search warrant, uncovered four kilos of cocaine. This is powerfully incriminating evidence against Berry. Furthermore, in light of the Government's success at the first trial, in which Berry and all of his co-defendants were convicted, this Court accepts the prosecutor's contention that he had no reasons to believe the jury would acquit Berry and his co-defendants.

Next, Berry complains the prosecutor improperly joined the Blakes' charges in the Second Superseding Indictment, and fallaciously included language in the indictment suggesting the drug conspiracy defendants were involved with firearms. Both of these actions– which Berry suggests were intentionally undertaken to goad him into moving for a mistrial– took place before the trial began, and certainly before defense counsel's cross-examination of Government witnesses. Thus, even if such cross examination had effectively discredited government evidence, there is nothing to

---

[9] For example, the Government introduced evidence that Berry had a key to Room 110 on his person when he was arrested. Berry contends he undermined this evidence by eliciting testimony from a Club St. Croix employee that only one key to Room 110 was given out and that, at the time of his co-defendant's arrest, his co-defendant possessed the single key. Berry further argues he successfully discredited the evidence recovered near the scene of his arrest by suggesting that such evidence was manipulated or planted by police.

10

suggest the prosecutor expected this result before the trial began. To the contrary, Berry's counsel stated the defense's tactics and trial strategy at the second trial were strikingly different from the tactics of the first trial and admitted the defense's theory was completely unknown to the Government before trial. Thus, this Court finds Berry has not proven the Government's actions were motivated by a belief that Berry would be acquitted.

In support of the second *Curtis* factor, Berry argues a third trial would be desirable for the Government because he believes that, during the second trial, the Government gained valuable insight into Berry's theory of defense and discovered the methods by which Berry's counsel would cross-examine Government witnesses.[10] The Government states it had nothing to gain from a second reprosecution of the case, averring that Berry's first trial was a grueling five-week ordeal, and the second trial had been underway for three weeks when Berry successfully moved for a mistrial. In light of the significant time and effort devoted to each trial, the Government argues it had no motive to seek a third trial. This Court finds that, while the Government may receive an advantage from trying Berry a third time, such advantage is balanced out by the advantage Berry and his co-defendants gained from having the opportunity to preview the Government's evidence and probe the weaknesses in the Government's case. *See United States v. Archibald*, No. 02-355, 2003 U.S. Dist. LEXIS 2786, at *16 (E.D. Pa. Feb. 26, 2003) (citing *United States v. Lun*, 944 F.2d 642, 646 (9th Cir. 1991) (explaining that defendants also benefit by mistrial because "[t]hey have had the opportunity to see a substantial portion of the government's case-in-chief" and gain the ability to "portray the surprising incidents of the first trial in the most beneficial way for their position, from

---

[10] Berry had different attorneys at his first and second trial and contends the trial package and strategy of the second trial was markedly different, and, implicitly, markedly improved, compared to the defense strategy in place during the first trial.

11

the very outset"). Furthermore, if Berry and his co-defendants plan to stake their defense upon inconsistent testimony by Government witnesses, they now have the advantage of prior statements of such witnesses, made under oath, which could serve either as substantive evidence or as a fertile area of impeachment should the witnesses alter their testimony. Similarly, the Government is disadvantaged by reprosecution to the extent that inconsistent testimony of Government witnesses has been recorded and could potentially be used by the defense as exculpatory material at the third trial. Thus, this Court finds Berry has failed to prove retrial gives a significant advantage to the prosecution.

Third, Berry contends the prosecutor has failed to justify his remarks to the trial court because he has failed to explain why he included firearms possession and secretion in the manner and means section of Count 1 of the indictment, why he joined the Blakes in the Second Superseding Indictment, and why he asserted he would prove up the connection between the gun evidence and the drug charges when he could not make such a connection. Berry argues the Government knew it could not make such an evidentiary connection because it had failed to do so at the first trial and had received an explicit ruling from the original trial court that the firearm evidence was not connected to the drug charges. In light of the trial court's prior ruling, Berry argues the Government ignored the law of this case and misled the grand jury, trial jury, and the trial court by suggesting he had evidence connecting firearms to the drug conspiracy.

To justify his statements to the trial court, the prosecutor stated he believed introduction of firearms evidence at trial was proper and the Blakes were properly joined. In support of this, the prosecutor argued that firearm evidence was one prong by which the Government could prove the manner and means of the drug conspiracy charged against Berry, Claxton, Simon, and Liburd. He

12

said manner and means evidence does not constitute an offense which the Government must prove beyond a reasonable doubt, but rather constitutes evidence suggesting the existence of a conspiracy between multiple defendants. Also, the prosecutor argued joinder of the Blakes was proper because Government agents discovered the firearms charged in Counts 11 and 12 of the indictment as a direct result of their investigation of Zacharias Blake's involvement in the drug conspiracy. Thus, the Government contends including the Blakes' territorial firearms offenses in the indictment provided clarity at trial and served the interests of judicial economy.

Berry stated at oral argument that he did not believe the prosecutor intentionally included evidence to goad a motion for mistrial, but argued the prosecutor recklessly made such statements and took such actions. This Court finds prosecutorial recklessness, even if it existed at Berry's second trial, is insufficient to warrant dismissal of an indictment. In order to bar retrial of a defendant, prosecutorial misconduct must be intentional and not simply negligent or reckless. *Government of Virgin Islands v. Scuito*, 623 F.2d 869 (3d Cir. 1980); *United States v. Williams*, 472 F.3d 81, 85-86 (3d Cir. 2007) ("[A]pplication of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case."); *see also Kennedy*, 456 U.S. at 688 ("It is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant.") (Stevens, J., concurring).

While the prosecutor in this case may have acted overzealously by attempting to introduce firearm evidence at Berry's drug trafficking trial and by joining the Blakes' charges with Berry's indictment, "the Supreme Court has explicitly rejected the notion that prosecutorial overreaching, absent a specific intent to provoke a mistrial, violates the Double Jeopardy Clause." *Barnard*, 318

13

Fed. Appx. at 146 (citing *Kennedy*, 456 U.S. at 674-75). The remedy for such overreaching by a prosecutor is a mistrial, not dismissal of the indictment. *Id.* This Court agrees the Government's attempt to introduce firearm evidence in this drug conspiracy case was an attempt to prejudice the jury against the defendant, however, there is no evidence to suggest the Government intentionally introduced such evidence in an attempt to goad Berry or his co-defendants into seeking a mistrial. Based on the prosecutor's representations, it appears he truly, though incorrectly, believed there was a nexus between the firearms and the drugs in this case. His incorrect legal conclusion regarding such a nexus is insufficient to show a subjective intent to induce a mistrial.

Accordingly, Berry's motion to dismiss, and those of his co-defendants, is denied. An appropriate Order follows.