DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 2006-30 |
| | ) | |
| KALIF BERRY, | ) | |
| ST. CLAIR LIBURD, | ) | |
| RANDY SIMON, and | ) | |
| BLAIN CLAXTON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ATTORNEYS:**

**Alphonso A. Andrews, AUSA**
St. Croix, U.S.V.I.
    *For the Plaintiff,*

**Alvin E. Entin, Esq.**
Fort Lauderdale, FL
    *For defendant Kalif Berry,*

**H.A. Curt Otto, Esq.**
St. Croix, U.S.V.I.
    *For defendant Kalif Berry,*

**Jeffrey Moorehead, Esq.**
St. Croix, U.S.V.I.
    *For defendant St. Clair Liburd,*

**Yohana M. Manning, Esq.**
St. Croix, U.S.V.I.
    *For defendant Randy Simon,*

**Martial Webster, Esq**.
St. Croix, U.S.V.I.
    *For defendant Blain Claxton.*

## MEMORANDUM OPINION

Before the Court is the motion of Kalif Berry ("Berry") for a stay of this matter pending his interlocutory appeal. Berry has appealed this Court's order denying his motion to dismiss based upon the Double Jeopardy clause of the Fifth Amendment. Berry's codefendants Blaine Claxton ("Claxton") and St. Clair Liburd ("Liburd") join his motion. The government opposes the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2005, law enforcement agents on St. Croix, U.S. Virgin Islands, began monitoring the telephones of Berry, Claxton, and Zacheaus Blake ("Z. Blake").[1] The agents overheard discussion of drug transactions, hiding drugs, and the recovery of drugs and weapons. The agents learned that Berry intended to rent a room in which to cook cocaine base ("crack").

Agents determined that Z. Blake was cooking cocaine at Club St. Croix (the "Club"). Observers saw Liburd and another man exit room 110 of the Club. The men were stopped and searched. The search recovered crack and other drug paraphernalia.

---

[1] Zacheaus Blake has entered a guilty plea in this matter.

Berry later exited room 110, and fled upon seeing police. Berry was apprehended, and agents recovered several items from near where he had fled, including crack.

Law enforcement officials obtained a warrant for room 110 and searched it. They found cooking utensils containing cocaine residue, which they believed had been used to make crack.

After Berry was arrested, he called Z. Blake from jail. Berry told Blake to move "four plates of food" to the apartment of Karen Blake ("K. Blake"), Z. Blake's sister (jointly, the "Blakes"). Agents intercepting the call believed Berry was instructing Z. Blake to move four kilograms of cocaine. They obtained a search warrant for K. Blake's residence. The search recovered four kilograms of cocaine.

Agents later overheard a telephone call in which Z. Blake stated that he had two guns at K. Blake's residence. Agents conducted a second search of the residence, and recovered two firearms, three ski masks, three bullet proof vests, and three police t-shirts.

While monitoring his telephone on the same day, agents heard Z. Blake tell his girlfriend, Delma Matthews ("Matthews"), to remove some items from his mother's house. Agents went to the house and intercepted Matthews. They executed a search warrant

on her car, and found a gun and a safe containing $35,000 in cash.

On September 26, 2006, a grand jury indicted Berry and seven codefendants with various drug and gun charges. A superseding indictment was filed on October 17, 2006.

The trial of the defendants began on April 11, 2007. Following a five week trial, Berry and his codefendants were convicted of all counts that remained pending against them.[2] Berry was convicted of crack and powder cocaine related charges and use of telephones to facilitate drug distribution. The trial included two local firearms charges against the Blakes.

Following the trial, Berry discovered that one of the jurors had served on another jury that had convicted him. He moved for a new trial, pursuant to Federal Rule of Criminal Procedure 33. On December 15, 2008, the Court granted that motion as to all defendants.

Prior to the second trial, the Blakes moved for a judgment of acquittal on a number of charges. Most significant to the instant motion, the Blakes moved for acquittal on Count 13 of the Indictment, which charged them with possession of a firearm in

---

[2] Matthews entered a guilty plea. Codefendant Germaine Hermas, and some of the counts against other defendants, were dismissed in response to Federal Rule of Criminal Procedure 29 motions.

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I) (the "§ 924(c) charge").

The Court granted the motion, ruling there was not a sufficient nexus between the firearms found at K. Blake's house and the drug conspiracy charged in the indictment. In particular, the Court found that the government had failed to present any evidence that the guns at K. Blake's house were used to protect the drug cooking operation, or guard stored drugs at the house.

The Court denied the Blakes' motion for acquittal on Counts 14 and 18 of the indictment. Those counts charged unauthorized possession of a firearm, in violation of V.I. CODE ANN. tit. 14, § 2253(a).

On May 20, 2009, the government filed a second superseding indictment, which omitted the dismissed § 924(c) charge and added no new charges. However, Count 1, which charged a drug conspiracy, still contained references to firearms.

The second superseding indictment in pertinent part provides: "Defendants utilized various means to achieve the goals of the conspiracy. For example they: . . . 5) Possessed and secreted firearms and bullet proof vests in order to protect the illegal drug trafficking enterprise. . . . OVERT ACTS In furtherance of the conspiracy: . . . 3) Defendant Zacheaus Blake,

during the period of the conspiracy, stored two firearms at the house of defendant Karen Blake." (Second Superseding Indictment 3-5.)

Z. Blake moved to strike from the indictment language regarding his possession of firearms. That motion was denied.

Berry argues that, after dismissal of the § 924(c) charges, he considered moving to sever his second trial from that of the Blakes. Berry contends he was worried that introduction of firearm evidence at his trial would prejudice him because he was not facing firearms charges. Berry contends that he did not make that motion because the language in Count 1 of the second superseding indictment convinced him that the government had uncovered new evidence which connected firearms to the conspiracy. Berry says he made this assumption because, given the Court's previous ruling that there was not a sufficient nexus between the firearms and the drug conspiracy, he did not think the government would attempt to include evidence of the guns from the first trial at the second trial unless there was newly discovered firearm evidence.

However, Berry did not ask the government for discovery materials related to the firearms referred to in the second superseding indictment.

The second trial of this matter began on June 1, 2009. Berry argues that the government's opening statement made it clear that there was no new firearm evidence. On June 8, 2009, K. Blake moved to sever Count 11, which charged her with unauthorized possession of a firearm, in violation of Virgin Islands law. She argued that the gun charge was improperly joined, given the Court's April 24, 2009 ruling that the guns found in her residence were not connected with drug activity.

Berry joined K. Blake's motion,[3] arguing that because he was not charged with any gun crimes, it would be prejudicial for the jury to hear firearms evidence during his trial.

The Court took the matter under advisement and requested further briefing from the parties.

Also on June 8, 2009, Berry filed a mid-trial motion in limine to exclude evidence of firearms, bullet proof vests, and police uniforms. He argued such evidence was not relevant. Alternatively, he argued that the evidence's prejudicial effect outweighed its probative value. The Court did not rule on this motion.

The same day, Berry filed a motion to sever his trial from that of the Blakes on the territorial firearms charges, Counts 11 and 12. Berry argued that the Blakes' territorial firearms

---

[3] Z. Blake and Claxton joined the motion to sever Count 11 as well.

charges were improperly joined in his indictment because there was no nexus between their gun charges and Berry's drug conspiracy charges.

The government opposed Berry's motion to sever his trial from that of Counts 11 and 12, as well as the various defense motions to sever counts and defendants. To establish a nexus between the drugs and guns involved in the case the government made several arguments. First, they asserted that the defendants were charged with a drug conspiracy. They then argued that K. Blake maintained a premises used by the conspiracy to store guns. The charges against all defendants stemmed from the activities of Z. Blake and a wiretap that recorded conversations of all the defendants. (D.E. 774.)

The government also argued that Z. Blake's possession of firearms was part of the same scheme and plan as the overt drug trafficking acts. (D.E. 775 at 2-3.) The government further argued that there was a sequential chain of events connecting the drug and gun crimes. That is, the wiretap that caused agents to seize cocaine resulted in Z. Blake's arrest. In turn, that resulted in Z. Blake telling Berry to move drugs, which then resulted in the seizure of more evidence. (D.E. 776 at 2-3.) The government suggested that the Court could cure any prejudice with a proper limiting instruction.

The Court construed the mid-trial motions to sever as motions for a mistrial. The Court found that because the gun charges in Counts 11 and 12 were substantive offense charges arising out of the conspiracy charged in Count 1, they were properly joined with the conspiracy charge as to Z. Blake, who was charged in all three counts. The Court also found that, because the substantive offense counts were also overt acts, joinder was not prejudicial as to any of the defendants named in Count 1. The defendants named in Count 1 were Z. Blake, Berry, Liburd, Simon, and Claxton.

As to K. Blake, the Court noted that she was not charged in Count 1, and that she was charged with permitting her brother to manufacture and store drugs in her residence. "Thus, a mistrial would only be appropriate if the Government fails to prove that the manufacturing and storing of controlled substances charged in Counts 2, 3, and 9, is connected with the storage of firearms charged in Count 11, as part of a common scheme or plan." (D.E. 783 at 3-4.)

At the close of the government's evidence, the Court found that "the Government failed to show the connection between the firearms and the Defendants' drug-trafficking conspiracy. Therefore, the joinder of Counts 11 and 12 as to Defendants Khalif Berry, Randy Simon, Blaine Claxton and St. Clair Liburd,

constitutes what has been termed 'retroactive misjoinder.'" (D.E. 796 at 1.) Further the Court's limiting "instruction, even together with the Court's usual instructions to consider each defendant and each count separately, will be insufficient for the jury to fully compartmentalize this inflammatory evidence. The clear and substantial prejudice that Defendants Berry, Simon, Claxton, and Liburd face by being tried together with Karen Blake and Zacheaus Blake on Counts 11 and 12 warrants granting their motions for a mistrial." (*Id.* at 2.) The Court found that Count 11 was shown to be related to the conspiracy, but that Count 12 was not. Because the Blakes were both facing gun charges, the Court held there was no prejudice to K. Blake from the inclusion of a gun charge in which she was not named. However, the Court found that there was clear and substantial prejudice to Berry, Simon, Claxton, Liburd, and granted those defendants' motions for mistrial.

On August 5, 2009, Berry filed a motion to dismiss based on a violation of the Double Jeopardy Clause. He argued that the prosecution had goaded him into moving for a mistrial. This Court denied that motion.

On June 21, 2010, Liburd filed a notice of appeal of that order. On June 22, 2010 Berry and Claxton also filed notices of appeal.

On June 22, 2010, Berry also filed the instant motion to stay this matter pending appeal. This matter is scheduled to proceed to trial for a third time on November 8, 2010.

## II. DISCUSSION

### A. Stay Pending Appeal

When evaluating a motion for a stay pending an appeal, a court should consider: (1) whether the stay applicant made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will suffer irreparable injury absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). A stay is an "exercise of judicial discretion," and "[t]he propriety of issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 129 S.Ct. 1749, 1760 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)). "Where the latter three factors favor a stay, [an applicant] need only demonstrate a substantial case on the merits to warrant issuance of a stay[.]" *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 190 (D.V.I. 1997) (quotation marks and citation omitted).

A stay pending appeal has been described as an extraordinary remedy. *See United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (citing *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 686 (5th Cir. 1968)).

**B. Frivolity Finding**

The Double Jeopardy Clause protects criminal defendants from later prosecutions for the same offense. *See* U.S. CONST. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."). In a jury trial, Double Jeopardy rights do not attach until the jury is empaneled and sworn. *Gómez v. United States,* 490 U.S. 858 (1989).

In *United States v. Abney*, 431 U.S. 651 (1977), the United States Supreme Court held that the denial of a motion to dismiss on double jeopardy grounds is a final, appealable order. *Abney*, 431 U.S. at 659-64. "[O]rdinarily[,] the trial court loses its power to proceed once a party files a notice of appeal." *United States v. Leppo*, 634 F.2d 101, 104 (3d Cir. 1980). However,

> an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusion by written findings. Rather, both the district court and court of appeals shall have jurisdiction to proceed.

*United States v. Berry, et al.*
Criminal No. 2006-30
Memorandum Opinion
Page 13

*Id.* at 105; *see also United States v. LaMere*, 951 F.2d 1106 (9th Cir. 1991)(a matter can proceed to trial even during the pendency of a double jeopardy appeal, when the outcome is "clear" upon "long-standing case law" binding in that circuit).

### III. **ANALYSIS**

Berry argues that this matter should be stayed while he pursues his interlocutory appeal because his underlying motion for dismissal was not frivolous.[4] A court must address four pertinent factors when considering a motion to stay: (1) whether the stay applicant made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will suffer irreparable injury absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Berry fails to address any of these factors.

**1. Likelihood of Success on the Merits**

Previously, this Court addressed the merits of Berry's motion to dismiss for Double Jeopardy. The Court held that none

---

[4] This Court faced a similar issue in *United States of America v. Mark,* No. 2006-80 (D.V.I. May 23, 2010) where the defendant, Vernon Fagan, filed an emergency motion for stay of trial pending his double jeopardy appeal. This Court denied his motion and he appealed. The Third Circuit subsequently denied his appeal. *United States of America v. Vernon Fagan*, No. 10-2458 (3d Cir. filed May 23, 2010).

of Berry's arguments regarding the three *Curtis* factors weighed in favor of granting dismissal.

"The general rule is said to be that the double jeopardy clause does not bar reprosecution, . . . where circumstances develop not attributable to prosecutorial or judicial overreaching, . . . even if defendants motion [for mistrial] is necessitated by a prosecutorial error." *Oregon v. Kennedy*, 456 U.S. 667, 670 (1982) (internal quotation marks and citation omitted). "However, retrial is barred where the [prosecutorial] error that prompted the mistrial is intended to provoke a mistrial or is motivated by bad faith or undertaken to harass or prejudice the defendant." *Id*. (internal quotation marks and citations omitted).

In order for the Double Jeopardy Clause to bar a retrial where a defendant has moved for a mistrial, the case must fit into a narrow exception in which "the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.'" *Id*. at 673 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)).

Based upon *Kennedy*, Berry argued that three forms of intentional prosecutorial misconduct had infected his trial: (1) the government improperly joined the Blakes' territorial firearms charges in the second superseding indictment following dismissal

of the Blakes' § 924(c) charges; (2) the government's second superseding indictment improperly stated that the defendants "[p]ossessed and secreted firearms and bullet proof vests" as part of their ongoing drug trafficking conspiracy; and (3) the government introduced firearms evidence at Berry's second trial. Berry argued that all three actions constituted prosecutorial misconduct in light of the Court's ruling that there was not sufficient proof of a nexus between the firearms and the drug charges.

He further argued that the government's actions allowed the jury to hear prejudicial evidence against Berry with no risk because if he protested by moving for a mistrial, the government could try him again with new insight into his defense strategy.

Reviewing Berry's motion, this Court applied the factors articulated by the United States Court of Appeals for the Third Circuit to decide if the prosecutor had the subjective intent to goad him into moving for a mistrial. Those factors are "(1) whether the record contains any indication that the prosecutor believed the defendant would be acquitted; (2) whether a second trial would be desirable for the government; and (3) whether the prosecutor justified his remarks to the trial court." *United States v. Barnard*, 318 Fed. Appx. 143, 145 (3d Cir. 2009)

(unpublished) (citing *United States v. Curtis*, 683 F.2d 769, 777-78 (3d Cir. 1982)).

In reviewing the motion for dismissal based on prosecutorial goading, this Court found that the weight of evidence and the transcripts of counsels' interactions with the bench did not support Berry's argument as to any of the three *Curtis* factors. First, the Court found "nothing to suggest the prosecutor believed Berry would be acquitted" because it had produced "powerfully incriminating evidence against Berry[,]" and because the government had successfully gained a conviction at the first trial. (D.E. 963 at 10.) Second, the Court found that any advantage the government might have gained in a third trial "is balanced out by the advantage Berry and his co-defendants gained from having the opportunity to preview the Government's evidence and probe the weaknesses in the Government's case." *Id*. at 11. Most significantly, for the analysis of the instant motion, was the Court's finding with respect to the third factor. The Court found that the prosecutor's justification for including firearms possession and secretion language in the "manner and means" section of Count 1 of the indictment showed that the prosecutor acted recklessly or overzealously, but not with a subjective intent to goad defendants into moving for a mistrial.

(D.E. 963 at 12-13.)  Accordingly, the Court denied the Double Jeopardy dismissal motion on June 18, 2010.

Nothing that has been presented since the Court's denial of the motion infuses Berry's motion with merit.  As such, the Court finds that Berry has failed to show that he is likely to succeed on the merits of his pending appeal.  Moreover, the Court finds the appeal to be frivolous.

**2. Irreparable Injury Absent a Stay**

Absent a stay, Berry may be tried.  To the extent he prevails on his pending appeal, his injury may be that he was tried when a trial was not legally authorized.  While being subject to a trial under those circumstances conceivably may cause some injury, it is not necessarily irreparable.  Any conviction necessarily would be void or voidable. On the other hand, if Berry's appeal is denied, there would be no injury as a speedy trial is essential.  In any event, this factor neither favors nor disfavors a stay.

**3. Injury to the Other Parties Interested in the Proceeding & the Public Interest[5]**

In *United States v. Leppo*, the Third Circuit recognized that *Abney,* "had the effect of providing criminal defendants with an

---

[5] The traditional stay analysis calls for separately assessing the harm to the opposing party and weighing the public interest.  These factors merge when the Government is the opposing party.  *Nken v. Holder*, 129 S.Ct. 1749, 1762 (2009).

effective new tool for delaying their trials for long periods of time." 634 F.2d at 104. That effect was mitigated when it was recognized that frivolous appeals could have no such preclusive effect. *Id.* at 105 Where, as here, such an appeal is presented, a stay would delay an already protracted adjudication. Such a result as a consequence of a frivolous appeal would not serve the public interest.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Berry's motion to dismiss based on Double Jeopardy was frivolous as it was legally and factually unsupported. Accordingly, the Court will deny Berry's motion to stay this matter pending his interlocutory appeal. An appropriate order accompanies this memorandum opinion.

```
                              S_____
                                CURTIS V. GÓMEZ
                                 Chief Judge
```